The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pamela T. Young. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. The carrier on the risk at all relevant times herein was Allstate Insurance Company.
4. The date of the alleged injury to the plaintiff's left shoulder was 9 June 1995.
5. The parties stipulated to the plaintiff's medical records from Charlotte Orthopaedic Specialists, including medical notes of Drs. H. Y. Dunaway, III and David S. Baker, II; Miller Orthopaedic Clinic, Inc., including medical notes of Dr. Donald F. D'Alessandro; Compleat Rehab Services, Charlotte Radiology, P.A. and Presbyterian-Orthopaedic Hospital.
6. The parties also stipulated to Industrial Commission Forms 21, 24, 33R, the 24 June 1996 Administrative Decision and Order of the Industrial Commission Form 24 proceeding, Industrial Commission Orders of 18 July 1996 and 2 October 1996, as well as the plaintiff's Response to the Defendants First Set of Interrogatories and Request for Production and the defendants Response to the Plaintiff's Interrogatories.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff-employee was 45 years old with a Masters Degree in Health Education-Physical Therapy. The plaintiff-employee suffered from polio as an infant and as a result she uses her arms more than most people because her legs are weak. The plaintiff-employee often used a three-wheel cart once a week when shopping, but after her admittedly compensable injury by accident on 9 June 1995, the plaintiff-employee could no longer lift the cart in and out of her vehicle. The plaintiff-employee is right hand dominant.
2. The plaintiff-employee began working for the defendant-employer in April of 1994 as a Physical Therapist.
3. On 9 June 1995, the plaintiff-employee sustained an admittedly compensable injury by accident to her right shoulder when she fell at work, hit a landscaping timber, and tore her right rotator cuff.
4. The plaintiff-employee presented to Dr. H. Yates Dunaway, III, an orthopaedic surgeon, on 14 June 1995. Dr. Dunaway determined that the plaintiff-employee had exacerbated an underlying chronic right subacromial bursitis. Dr. Dunaway subsequently ordered an MRI which revealed degenerative changes in the AC joint and acromion with apparent impingement of both areas and a full-thickness rotator cuff tear.
5. On 18 July 1995, Dr. Dunaway performed surgery on the plaintiff-employee to repair her right rotator cuff tear.
6. Following several post-operative appointments, the plaintiff-employee returned to Dr. Dunaway on 18 October 1995 and reported that she was doing well and had even shoveled dirt in her yard without any pain. However, the plaintiff-employee complained of left shoulder pain.
7. Dr. Dunaway diagnosed the plaintiff-employee with a left rotator cuff tear and performed surgery on the plaintiff-employee on 26 December 1995 to repair the tear.
8. Dr. Dunaway released the plaintiff-employee to return to work without restrictions to her right shoulder on 29 January 1996. However, on the same release form, Dr. Dunaway stated that the plaintiff-employee was unable to return to work due to her left shoulder surgery.
9. Dr. Dunaway determined that the plaintiff-employee's development of polio in infancy and the resulting development of lower extremity limitations throughout her entire adult life put an increased amount of stress on her upper extremities, the cumulative effect of which makes the plaintiff-employee more likely than the average person who does not put that type of stress on her upper extremities, to develop shoulder problems. Dr. Dunaway further stated that this increased stress on joints can cause cumulative microtrauma.
10. Dr. Dunaway opined that most rotator cuff tears occur due to cumulative microtrauma and that the plaintiff-employee's left shoulder had been receiving microtrauma all of the plaintiff-employee's adult life. Dr. Dunaway also determined that each time the plaintiff-employee used her left shoulder it contributed to her left rotator cuff tear.
11. Dr. Dunaway opined that in the grand scheme of trauma to which the plaintiff-employee's left shoulder had been subjected to through the years, the overuse of the left shoulder after the right rotator cuff repair was probably not significant, and that its role in making the left rotator cuff symptomatic was minimal. Dr. Dunaway further opined that the plaintiff-employee's right shoulder problem and resulting surgery had only a negligible effect on whether or not the plaintiff-employee tore her left rotator cuff.
12. On 20 June 1996, Dr. Dunaway released the plaintiff-employee at maximum medical improvement. He restricted the amount of heavy work the plaintiff-employee does with her left shoulder and restricted the plaintiff-employee from lifting more than 40 pounds from floor to waist, more than 30 pounds from waist to shoulder and significantly restricted overhead work.
13. Dr. Dunaway assigned a 10% permanent partial disability rating to the plaintiff-employee's right shoulder and recommended that the plaintiff-employee use a lift for her three-wheel cart.
14. There is insufficient medical evidence of record from which the Full Commission can find that there is a causal connection between the plaintiff-employee's admittedly compensable injury by accident of 9 June 1995 and her left shoulder symptoms.
15. The defendant-employer unilaterally ceased temporary total disability payments to the plaintiff-employee on 29 January 1996 without filing an Industrial Commission Form 24 application and without a hearing.
16. Because the defendant-employer unilaterally ceased payments of the plaintiff-employee's temporary total disability compensation without filing an Industrial Commission Form 24 application and without a hearing or the approval of the Industrial Commission, the defendant-employer has failed to comply with North Carolina Industrial Commission rules.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff has the burden of proof in each and every element of compensability Henry v. A. C. Lawrence LeatherCo., 231 N.C. App. 477, 57 S.E.2d 760(1950). In the instant case, the competent medical evidence in the record does not establish that the plaintiff's left rotator cuff tear was causally related to her 9 June 1995 admittedly compensable injury by accident to her right shoulder.
2. The greater weight of the evidence establishes that the plaintiff's left rotator cuff tear was due to the increased amount of stress placed on her upper extremities throughout her adult life which caused cumulative microtrauma and subsequently resulted in her left rotator cuff tear. Moreover, Dr. Dunaway opined that the plaintiff's increased use in her left arm and shoulder while recuperating from the right rotator cuff tear surgery was not significant, and only had a negligible effect on plaintiff's left rotator cuff tear. Since the plaintiff failed to carry the burden of proof, the plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act as to her left rotator cuff tear.
3. The plaintiff's left rotator cuff tear was not a result of an injury by accident arising out of the course and in the scope of the plaintiff's employment with defendant-employer, nor was the plaintiff's left rotator cuff tear causally related to the plaintiff's 9 June 1995 admittedly compensable injury by accident to her right shoulder. N.C. GEN. STAT. § 97-2(6).
4. The plaintiff sustained an admittedly compensable injury by accident to her right shoulder on 9 June 1995.
5. The plaintiff is entitled to 24 weeks of permanent partial impairment compensation as a result of the 10% rating to the plaintiff's right shoulder due to her admittedly compensable injury by accident of 9 June 1995. N.C. GEN. STAT. § 97-31.
6. The plaintiff is entitled to have defendants pay for all medical expenses incurred as a result of her 9 June 1995 admittedly compensable injury by accident to her right shoulder through and until 29 January 1996 for examinations, evaluations and treatments that were reasonably required to effect a cure, or give relief and which tended to lessen the period of the plaintiff's disability, including a lift for her three-wheel cart.
7. The plaintiff is entitled to temporary total disability benefits from 25 July 1995 and continuing until 29 January 1996 at a weekly rate of $478.00.
8. The defendants wrongfully, improperly and unilaterally terminated the plaintiff's temporary total disability benefits on 29 January 1996 without an Industrial Commission Form 24 Application to Terminate or Suspend Payments of Compensation and without a hearing.
9. Defendant-employer's failure to comply with North Carolina Industrial Commission rules has resulted in an attorney fee being assessed pursuant to Rule 802.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. The plaintiff's claim as to her left rotator cuff tear is and under the law must be DENIED.
2. The defendants shall pay the plaintiff for a permanent partial disability of her right shoulder, 24 weeks of compensation calculated upon a compensation rate of $478.00 per week. Compensation due which has accrued shall be paid to the plaintiff in a lump sum.
3. The defendants shall pay the plaintiff for temporary total disability compensation at the rate of $478.00 per week for the period beginning 25 July 1995 until 29 January 1996. If there is any compensation due which has accrued, it shall be paid to the plaintiff in a lump sum.
4. Defendants shall pay medical expenses incurred as a result of the plaintiff's 9 June 1995 admittedly compensable injury by accident to her right shoulder through and until 29 January 1996 for examinations, evaluations and treatments that were reasonably required to effect a cure, or give relief and which tended to lessen the plaintiff's period of disability, including a lift for her three-wheel cart.
5. The defendants shall pay in a lump sum the plaintiff's attorney's fees in the amount of $4,000.00.
6. The defendants shall pay the costs.
This the ___ day of August 1998.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ RENEE C. RIGGSBEE COMMISSIONER
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
TJB/cnp/db